**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HONG KONG IBESTTOUCH TECHNOLOGY CO. LTD., | : : : | Civ. Action No. 17-2441(FLW) |
| Plaintiff, | : : | |
| v. | : : | **OPINION** |
| IDISTRIBUTE LLC and JORDAN ROZANY, | : : : : | |
| Defendants. | : : | |

**WOLFSON, U.S. District Judge:**

Plaintiff Hong Kong Ibesttouch Technology Co. Ltd. ("Plaintiff" or "Ibesttouch") brought this breach of contract suit under the Uniform Commercial Code against Defendants iDistribute LLC and its owner, Jordan Rozany (collectively, "Defendants" or "iDistribute"), to recover unpaid monies for mobile device replacement parts and accessories sold to Defendants. In response, Defendants filed, *inter alia*, tort-related counterclaims against Plaintiff. In the present matter, pursuant to Fed. R. Civ. P. 12(c), Plaintiff moves to dismiss Counterclaims Five (Tortious Interference with Prospective Economic Opportunity), Six (Tortious Interference with Contract), Seven (Unjust Enrichment), and Nine (Fraud). For the reasons set forth below, Plaintiff's motion is **GRANTED**.

### BACKGROUND and PROCEDURAL HISTORY

Before the facts are recounted, I will first resolve a procedural dispute between the parties. In July 2017, Defendants filed a responsive pleading in the form of an Answer and Counterclaim. A little less than a month later, Defendants advised the Court and Plaintiff of their intent to amend

their answer to include additional counterclaims, and they did so in October 2017. Thereafter, Plaintiff filed its motion to dismiss Defendants' Amended Counterclaims. In response, not only did Defendants oppose the motion, but they also submitted for filing an Answer and Second Amended Counterclaim on November 16, 2017. *See* Docket #27. Defendants maintain that because they amended their Amended Counterclaim as of right, pursuant to Fed R. Civ. P. 15(a)(1)(B), Plaintiff's dismissal motion should be rendered moot. I do not agree.

Rule 15(a) of the Federal Rules of Civil Procedure states:

(a) Amendments Before Trial.

> (1) *Amending as a Matter of Course*. A party may amend its pleading once as a matter of course within:
>
>> (A) 21 days after serving it, or
>>
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). Contrary to Defendants' position, the filing of their Second Amended Counterclaim is not as a matter of course pursuant to Rule 15(a)(1)(B). Because Plaintiff filed its answer to the Amended Counterclaim on October 16, 2017, the deadline for Defendants to amend as of right expired on November 6, 2017, 21 days after Plaintiff's responsive pleading. While Plaintiff filed the present motion to dismiss on October 30, 2017, and Defendants amended their Amended Counterclaim within 21 days of filing of this motion, *i.e.*, November 16, 2017, Plaintiff moves to dismiss under Rule 12(c), not under subsections (b), (e) or (f). As such, Defendants may not invoke Rule 15(a)(1)(B) to amend as of right. In that regard, the Court will treat allegations in

Defendants' Second Amended Counterclaim as proposed amendments. I note that Defendants have voluntarily withdrawn Count Seven, unjust enrichment.

However, even if the Court were to consider the additional proposed amendments, Defendants still fail to state a claim in Counts Five, Six and Nine. Accordingly, for the purposes of this motion, I will analyze, and take as true, Defendants' allegations asserted in their Proposed Second Amended Counterclaim ("Counterclaim").

iDistribute, owned by defendant Rozany, distributes and recycles mobile device parts and accessories from its principal place of business in New Jersey. *See* Counterclaim, ¶ 1. Ibesttouch supplies mobile device replacement parts and accessories from China. *Id.* at ¶ 2. In March 2016, Ibesttouch solicited iDistribute for business, representing that Ibesttouch's products have a defective rate lower than 1%, and that it provides lifetime warranty before installation. *Id.* at ¶¶ 3-4. According to iDistribute, based on those representations, it made its first order in October 2016. *Id.* at ¶ 5. Between October 2016 and January 2017, the parties engaged in numerous business transactions, wherein iDistribute paid Ibesttouch approximately $891,000.00 for products delivered by Ibesttouch. *Id.* at ¶ 7. Soon after shipments were made, however, iDistribute allegedly started to experience defects with the products, and it repeatedly informed Ibesttouch of the issues throughout their business relationship. *Id.* at ¶ 9.

In or around January 2017, iDistribute placed an order for parts and accessories for various Apple, Samsung, and LG devices in the amount of $383,347.18. *Id.* at ¶ 10. Thereafter, iDistribute received 45 boxes containing the products. iDistribute alleges that these products, too, had a very high defective rate. *Id.* at ¶ 13. According to iDistribute, "the total value of all defective products received by iDistribute from Ibesttouch is approximately $352,893.00, with new defects constantly being discovered at a value of approximately $1,000.00 per week." *Id.* at ¶ 14. iDistribute alleges

that it had provided Ibesttouch with notice of all the defects, and had attempted to return $94,000.00 worth of products to Ibesttouch through the postal service, as requested. *Id.* at ¶ 15. iDistribute is still in possession of defective products valued at approximately $250,000.00. *Id.* at ¶ 16.

iDistribute avers that based on the warranties, Ibesttouch should either credit the value of the defective products to iDistribute or replace at no additional cost. To date, iDistribute claims that Ibesttouch has failed to honor those contractual warranties. *Id.* at ¶ 18. Consequently, iDistribute alleges that it has lost customers and is unable to enter into new contracts without a reliable supply chain. *Id.* at ¶ 19. In that regard, iDistribute alleges that its revenue has continued to decline, approximately $250,000.00 per month, since Ibesttouch has been delivering products to iDistribute. *Id.* at ¶ 21. Specifically, iDistribute claims that it had ongoing and continuing sales or contracts with the following customers that were lost as a result of Ibesttouch's delivery of defective products: Mobile Matrix, Bobby Spielman, iColor FJ, LLC, iGeeks, iTech, and Cellairies, Clobal Celluar, Inc. *Id.* at ¶ 22. iDistribute further claims that Ibesttouch was aware of such contracts and customers. *Id.* at ¶ 23.

In their Proposed Second Amended Counterclaim, Defendants assert, *inter alia*, claims of tortious interference with prospective economic opportunity and contract, as well as common law fraud. In the instant matter, Plaintiff moves to dismiss those counterclaims under Rule 12(c).[1]

---

[1] I note that I am considering iDistribute's proposed amendments pursuant to Rule 15(a), to determine whether iDistribute may amend its Amended Counterclaims. In that regard, Rule 15(a)'s futility requirement is akin to a Rule 12(c) dismissal. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

**DISCUSSION**

**I.      Standard of Review**

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay trial." Fed. R. Civ. P. 12(c). The standard that a court applies on such a motion is the same standard that a court applies in deciding a motion to dismiss pursuant to Rule 12(b)(6). *Turbe v. Government of Virgin Islands*, 938 F.2d 427 (3d Cir. 1991); *see also Spruill v. Gillis*, 372 F.3d 218, 223 n. 2 (3d Cir. 2004) ("There is no material difference in the applicable legal standards"). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal citation and quotations omitted); *see also McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)). All reasonable inferences must be made in the non-moving party's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

Indeed, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of1 the necessary element.'" *Phillips*, 515 F.3d at 234 (quoting *Bell Atl. Corp. v. Twombly*,  27 S. Ct. 1955, 1965 (2007)). The court will only grant a motion under Rule 12(c) if "it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations[.]" *Celgene Corp. v. Teva Pharms. USA, Inc.*, 412 F. Supp. 2d 439, 443 (D.N.J. 2006). Furthermore, "the motion should not be granted 'unless the moving

party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004) (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)).

In sum, a complaint survives a Rule 12(c) motion if it alleges "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II.     Tortious Interference of Prospective Economic Benefit and Contract

Under New Jersey law, to properly state a claim for tortious interference with prospective economic benefit, a party must plead the following elements: (1) it had a reasonable expectation of an economic benefit; (2) the non-movant's knowledge of that expectancy; (3) wrongful, intentional interference with that expectancy; (4) the reasonable probability that the claimant would have received the anticipated economic benefit, but for the interference; and (5) damages resulting from such interference. *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 186 (3d Cir. 1992); *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751 (1989). Similarly, to sufficiently plead a claim of tortious interference with a contract, a party must allege the same elements as a claim for tortious interference with a prospective economic benefit, plus the additional element of a contract. *Med Alert Ambulance, Inc. v. Atlantic Health System, Inc.*, No. 04-1615, 2007 U.S. Dist. LEXIS 57083, at *43 (D.N.J. Aug. 6, 2007); *Graco, Inc. v. PMC Glob., Inc.*, No. 08-1304, 2009 U.S. Dist. LEXIS 26845, at *70 (D.N.J. Mar. 31, 2009). As such, the Court analyzes both claims in tandem.

Here, iDistribute's theory of tort goes beyond the boundaries of a tortious interference claim. iDistribute alleges that Ibesttouch continued to send defective products even after having been repeatedly informed that certain portions of Ibesttouch's shipments were defective. Counterclaim, ¶¶ 14-15. As a result of Ibesttouch's conduct, iDistribute claims that it "has lost customers and is unable to enter into new contracts without a reliable supply chain." *Id.* at ¶ 19. In an attempt to be more specific, iDistribute identifies six customers "that were lost [because of] Ibesttouch's delivery of defective products[,]" including, Mobile Matrix, Bobby Spielman, iColor FJ, LLC, iGeeks, iTech, and Cellairis, Clobal Cellular, Inc. *Id.* at ¶ 22. In a cursory fashion iDistribute avers that "Ibesttouch was aware of iDistribute's customers and contracts . . . ." *Id.* at ¶ 23. These allegations form the sum total of the factual bases for iDistribute's tortious interference claims, but they fall woefully short of the pleading requirements.

As to the initial two elements for a claim for tortious interference with prospective economic benefit, iDistribute is required to allege it had a reasonable expectation of an economic benefit and that Ibesttouch had knowledge of that expectancy. iDistribute does not come close to satisfying these factors. With respect to its reasonable expectancy, iDistribute alleges in conclusory fashion that it "has a reasonable expectation of advantage from a prospective contractual or economic relationship." *Id.* at ¶ 46. And, iDistribute claims that it is unable to enter into new contracts because of Ibesttouch's conduct. However, iDistribute's threadbare allegations do not contain any facts "giving rise to some 'reasonable expectation of economic advantage.'" *Printing Mart*, 116 N.J at 751 (citation omitted). Simply stating that it will lose prospective customers is insufficient; iDistribute runs afoul the pleading standard of *Twombly*. *See Advanced Oral Techs., LLC v. Nutrex Research, Inc.*, 2011 U.S. Dist. LEXIS 5266, at *27 (D.N.J. Jan. 209, 2011) (finding that when pleading a loss of prospective economic benefit, alleging simply that

"AOT has lost and will continue to lose substantial business from existing and prospective customer" does not meet the *Iqbal* and *Twombly* standard). Likewise, by merely alleging that Ibesttouch is generally aware of certain customers is not sufficient. iDistribute must allege additional facts to support its allegation that Ibesttouch had knowledge of iDistribute's prospective contracts or current customers. Without them, the allegation is simply unadorned based on nothing more than speculation. *See Digiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 564 (D.N.J. 2002)("General knowledge of a business relationship is not sufficient; the defendant must have specific knowledge of the contract right upon which his actions infringe.").

Perhaps, more importantly, iDistribute's claims for tortious interference fail, because they lack any allegations of Ibbesttouch's wrongful, intentional interference with either iDistribute's reasonable expectation of economic benefit or existing contracts. For this element, iDistribute is required to allege that defendant acted with "malice." *Printing Mart*, 116 N.J. at 756. Malice is not used in the literal sense requiring a showing of ill will towards a particular party. *Id.* Instead, for the purposes of this prong, malice is defined as a harm that was inflicted intentionally and without justification or excuse. *Id.* The relevant inquiry is whether the defendant's conduct was sanctioned by the "rules of the game." *Id.* at 757. Indeed, as the Third Circuit has explained, an unlawful interference exists where there is a "luring away, by devious, improper and unrighteous means . . . ." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016).

Here, there is no conduct alleged on the part of Ibesttouch that would establish the existence of an unlawful interference. The only wrongful act alleged is that Ibesttouch failed to abide by its warranty to "credit or replace" the defective products. Nowhere does iDistribute allege that Ibesttouch's conduct in this regard was done for the purposes of interfering with iDistribute's business. Indeed, the Proposed Second Amended Counterclaim lacks any facts from which this

Court can discern Ibesttouch's ill-motive.  Plainly, there is no allegation that Ibesttouch lured away, or interfered with, iDistribute's customers by improper or unrighteous means.  Finally, as to the final element— but for Ibesttouch's wrongful interference, iDistribute would have realized the economic benefit— iDistribute has failed to allege any facts to support its conclusory assertion that "Ibesttouch's interference caused the loss of the expected advantage."  Counterclaim, ¶ 48.[2] Accordingly, I find that iDistribute has failed to state a claim for either tortious interference of a prospective economic benefit or contract.[3]

### III.   Fraud

iDistribute's fraud claim fares no better.  To properly plead a claim for fraud under New Jersey common law, a plaintiff must allege: "(1) a material representation by the defendant of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intent that the plaintiff rely upon it; (4) reasonable reliance by the plaintiff; and (5) resulting damage to the plaintiff."  *Weil v. Express Container Corp.*, 360 N.J. Super. 599, 612-13 (App. Div. 2003). "[F]raud is never presumed, but must be established by clear and convincing evidence."  *Id.* at

---

[2]   The only element that I find iDistribute has sufficiently allege in its tortious interference claims is that iDistribute suffered an economic loss by losing customers and revenue. However, iDistribute has failed to allege sufficiently that such losses were due to Ibesttouch's conduct. Counterclaim, ¶¶ 21-22.

[3]   Ibesttouch also argues that the tortious interference claims are barred by the economic loss doctrine since iDistribute's allegations sound in breach of contract rather than tort.  I am not convinced that this doctrine would bar iDistribute's claims in this regard, because the alleged tortious conduct of interference on the part of Ibesttouch, albeit insufficiently alleged, is arguably extrinsic to the contract between the parties; that is, based on iDistribute's theory of tort liability, Ibesttouch intentionally deprived iDistribute of a sufficient supply line for the purposes of interfering with iDistribute's business.  *See State Capital Title & Abstract Co. v. Business Serv.*, *LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009)(citing *Capital Plus Equity, LLC v. Prismatic Dev. Corp.*, No. 07-321, 2008 U.S. Dist. LEXIS 54054 (D.N.J. July 16, 2008)(citation omitted)). However, I find that iDistribute's fraud claim must be dismissed based on this doctrine. *See*, *infra*.

613. In addition to setting forth those necessary elements, claims for common law fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Here, iDistribute alleges that "Ibesttouch intentionally and knowingly misrepresented to iDistribute that Ibesttouch's 'defective rate is lower than 1%. And [Ibesttouch] provide[s] lifetime warranty before installation. [Ibesttouch] [has] hk warehouse for the returned products." Counterclaims, ¶ 61. iDistribute further alleges that Ibesttouch made this misrepresentation knowing its falsity and with the intent that iDistribute would rely on the misrepresentations to make purchases from Ibesttouch. While it appears that the claim is not sufficiently pled under Rule 9(b), Ibesttouch rests my decision to dismiss on the alternative ground that the fraud claim is barred under the economic loss doctrine.

"The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract.'" *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995)). In that regard, "the economic loss doctrine 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort . . . .'" *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (citation omitted). "[W]hether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009); *Chen v. HD Dimension, Corp.*, No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010). "An alleged misrepresentation is extraneous to an agreement when it breaches a duty 'separate and distinct from the performance' of the agreement's

terms." *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *5 (D.N.J. Aug. 23, 2012) (citation omitted).

For example, "a plaintiff may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement." *State Capital Title*, 646 F. Supp. 2d at 676; *see Peters v. Countrywide Home Loans, Inc.*, No. 15-6329, 2016 WL 2869059, at *4 (D.N.J. May 17, 2016) ("The economic loss doctrine 'does not bar claims for fraud in the inducement of a contract,' because fraud in the inducement is fraud that induces the other party to enter into the contract in the first place.") (quoting *Bracco*, 226 F. Supp. 2d at 563-64); *Montclair State*, 2012 WL 3647427 at *4 ("Only those pre-contractual misrepresentations that are extraneous to the parties' contract may be brought alongside a breach of contract claim."). Conversely, courts consistently apply the economic loss doctrine where the fraud contemplated by the plaintiff is not extraneous to the contract, "'but rather on fraudulent performance of the contract itself.'" *Unifoil Corp. v. Cheque Printers & Encoders Ltd.*, 622 F. Supp. 268, 271 (D.N.J. 1985) (quoting *Foodtown v. Sigma Mktg. Sys., Inc.*, 518 F. Supp. 485, 490 (D.N.J. 1980)); *see*, *e.g.*, *Chen*, 2010 WL 4721514 at *9 (finding that the economic loss doctrine barred the plaintiff's fraud claim, where the complaint failed "to sufficiently allege a fraud separate and distinct from the performance of the Employment Agreement.").

Here, it is clear from the pleadings that the alleged misrepresentation attributable to Ibesttouch relates to the performance of the contract between the parties. Indeed, iDistribute's fraud claim asserts the same complained-of conduct set forth in the breach of contract counterclaim (Count One of the Counterclaim). *See* Counterclaim, ¶ 26 ("Ibesttouch delivered defective products and has failed to replace these product or credit iDistribute for the value of the defective

products despite iDistribute's payment to Ibesttouch pursuant to their contracts."). Nothing iDistribute alleges in its fraud claim concerns any conduct that could be construed as extrinsic to the contract between the parties; that is, there is no alleged misrepresentation extraneous to the contract. Rather, both the contract and fraud claims are based on the parties' agreement that Ibesttouch would replace, or credit iDistribute for, the defective products. As such, under the economic loss doctrine, iDistribute's fraud claim is dismissed.

## CONCLUSION

Based on the foregoing, Ibesttouch's motion for judgment on the pleadings is **GRANTED**. In that connection, Defendants' unjust enrichment claim is dismissed. Additionally, because the Court finds the proposed amendments futile with respect to Defendants' claims of (i) tortious interference with prospective business benefit, (ii) tortious interference with contract, and (iii) fraud, Defendants' Second Amended Counterclaim, which was also procedurally improperly filed, is stricken from the docket.[4] Should Defendants, through discovery, uncover additional evidence to support these three dismissed-claims, they can move to amend the Amended Counterclaim before the Magistrate Judge.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. District Judge

---

[4] After striking Defendants' Proposed Second Amended Counterclaim, the Amended Counterclaim is Defendants' operative pleading. Consistent with this Opinion, the remaining claims in the Amended Counterclaim are as follows: Counts One (breach of contract), Two (breach of the implied covenant of good faith and fair dealing), Three (breach of express warranty), and Four (breach of implied warranty).